**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| MATTHEW CALEB SAWYER | CIVIL ACTION NO. 22-0602 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| CHRIS STINSON, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Plaintiff Matthew Caleb Sawyer, a prisoner at Madison Parish Correctional Center ("MPCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately March 2, 2022, under 42 U.S.C. § 1983.  He names the following defendants: Warden Chris Stinson in his individual capacity, Major Tommy Farmers in his individual capacity, Medical Director Jane Doe in her individual and official capacities, Lieutenant Fletcher in his individual capacity, the unidentified owner of Security Management, LLC, in his or her individual and official capacities, and the unidentified owner of the medical company which "provides services for inmates at" MPCC in his or her individual and official capacities.[1]

For reasons that follow, the Court should retain Plaintiff's claims that Major Tommy Famers and Medical Director Jane Doe, in their individual capacities, responded with deliberate indifference to his requests for medical care on February 7 and 9, 2022.  The Court should dismiss the remaining claims.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

**Background**

Plaintiff arrived at MPCC in August 2021.  [doc. # 5, p. 14].  He has cervical and lumbar spondylosis, which causes him extreme pain, arthritis, and compression "along his entire spinal column."  *Id.* at 3, 5.  In August 2021, he informed a nurse during "intake" of all his medical concerns, including his cervical and lumbar spondylosis.  [doc. # 21, p. 3].

Plaintiff asked to see a physician to obtain a prescription for "NSAID" to help reduce swelling in his spinal column.  [doc. # 5, p. 5].  He suggests that he submitted his request in August 2021.  *Id.* at 6-7.

Plaintiff alleges that he informed the medical director that he "was having very painful acid reflux and that he needed to be placed back on heartburn medicine[,]" but the medical director ignored him.  *Id.* at 5.  He suffered from pain that "could have damaged his esophagus."  *Id.*

Plaintiff "was unable to" obtain an increased dosage of Cymbalta even though it "was ordered by neurology."  *Id.*

Plaintiff attempted to inform the medical director in writing that "sometimes his tonsils swell up and he will have green mucus come out of his eyes for hours as if he had an infection."  *Id.* at 5-6.  He claims that medical staff did not respond to his communication.  *Id.*

Plaintiff states that in late 2021, he "was called out to D Dorm to have blood taken (14-panel)."  [doc. # 21, p. 3].  He adds that "someone ordered this bloodwork . . . ."  *Id.*  He surmises that if the medical staff at MPCC ordered it, then "obviously" the staff was aware of his serious medical concerns.  *Id.*

Plaintiff alleges that on November 8, 2021, he attempted to inform the medical director that he needed "to visit neurology[,]" to "have bloodwork conducted," and to obtain "a viral load

for" Hepatitis C.  *Id.* at 4.  He included addresses where his medical records could be located.  *Id.*  He claims that the medical director did not address his request.  *Id.*

On December 12, 2021, Plaintiff "submitted a MEDICAL EMERGENCY ARP[,]"[2] in which he explained to "staff" that he "has cervical and lumbar spondylosis[,]" that arthritis is "'eating [his] spine away,'" that he had acid reflux since February 2021 but was unable to see a doctor, that his tonsils swell occasionally and cause green mucus to emit from his eyes for hours, that he needs a Hepatitis C "viral load conducted[,]" and that he had a neurology appointment for either March or April 2021, but "the appointment was not fulfilled."  *Id.* at 4-5.  Plaintiff claims that his emergency ARP was "not addressed by anyone at MPCC" and that a staff member returned his ARP with the notation, "Use proper form[.]"  *Id.* at 5.  Plaintiff alleges that the notation in the response proves that a medical staff member "was aware of his issues."  *Id.* at 14.

Plaintiff states that on December 27, 2021, he "wrote the medical director a request[,]" stating that his pain medications were "not on the cart[,]" that his spine hurt "bad[,]" that he needed hospital care because he was in serious pain, that he had "been asking to see the doctor for months[,]" that he endured withdrawals each time his Cymbalta medication was not refilled, that he needed hot cream for arthritis pain in his spine, that acid reflux was "killing" him, and that he needed to see a physician.  *Id.* at 5-6.  He claims that his "request was never addressed." *Id.* at 6.

Plaintiff alleges that on January 16, 2022, he wrote a letter to the warden at MPCC, raising concerns about, *inter alia*, "8th Amendment medical claims in regards to all his concerns [sic][,]" "access to court[,]" and the staff's failure to respond to his request forms or grievances.

---

[2] By "ARP," Plaintiff presumably refers to the administrative remedy procedure at MPCC or to a grievance or request he submitted using the administrative remedy procedure at MPCC.

*Id.* Plaintiff claims that the warden did not respond to his letter. *Id.* He wrote the warden numerous times, but all his "requests/ARPs directed to the warden went unanswered." *Id.* at 13. He claims that the warden "should ensure that the grievance procedure is being conducted properly . . . ." *Id.* He adds that "not receiving any of [his] letters or ARPs should not free [the warden] from liability for the constitutional violations that have occurred under his watch at MPCC[,]" including violations by Major Farmers, the medical director, and Lieutenant Fletcher. *Id.*

On February 6, 2022, Plaintiff sent the medical director a "medical request," seeking an audience with a physician. [doc. # 5, p. 6]. On February 7, 2022, Plaintiff informed the medical director in person that he had "been writing her since August of 2021 about all of his concerns . . . ." *Id.* at 7. He also informed Major Farmers that the deadline for responding to his grievances passed and he had not received any responses. *Id.* The medical director and Major Farmers responded that "they had never received any of his request forms or complaints." *Id.* The medical director told Plaintiff that he "would see the doctor the following week." *Id.*

On February 9, 2022, the medical director informed Plaintiff that he would not receive any medication for his hemorrhoids, stating, "you need to eat more cornbread, you're too young for all these health concerns." *Id.* Plaintiff informed the medical director that he had pain in his "throat area[,]" swelling, and green mucus discharging from his eyes for hours. *Id.* at 7-8. He informed her that he needed medication for his acid reflux. *Id.* at 8. He also informed her that he had cervical and lumbar spondylosis, that his condition was rapidly becoming worse, that he could feel his spine deteriorating, and that he suffered serious pain. *Id.* She responded that it was his "responsibility to provide her with all the information as to the location of his medical

records . . . ." *Id.* Plaintiff states that he already gave her this information. *Id.* That said, he again provided locations of his records. *Id.* at 10.

Plaintiff alleges that the "following week came and went and [he] still did not get the opportunity to visit the doctor as promised by the medical director." *Id.* at 8. Tentatively faulting the medical director and Major Farmers, he states that he "has been refused medical attention." [doc. # 21, p. 13]. He states that Farmers was aware of his medical concerns. *Id.* The medical director ignored Plaintiff's complaints and denied him medication. *Id.* He suggests that Farmers and the medical director were aware of, yet ignored, his concerns. *Id.* at 14.

Plaintiff claims that MPCC does not have "an adequate system for" ensuring that prisoners are diagnosed and treated. [doc. # 5, p. 9]. He alleges that there are "systemic deficiencies in staffing, facilities, or procedures which" cause suffering. *Id.* He states that if the medical director did not receive any of his request forms or complaints for over six months, it was because he was "denied copies of 'proper request forms' or 'medical requests . . . .'" *Id.* He "was unable to make his medical problems known to" medical staff. *Id.*

Similarly, Plaintiff faults "the owner of Security Management, LLC, and/or the owner of the medical company who provides services for inmates at MPCC" for not having "an adequate system for ensuring that prisoners are diagnosed and treated." [doc. # 21, p. 8]. He alleges that during his entire time at MPCC, he did not receive a meaningful response to any of his request forms or ARPs. *Id.* at 8-9. As above, the medical director and Major Farmers informed Plaintiff that "they never received any of his request forms/grievances"; consequently, Plaintiff alleges that he was "unable to make his medical problems known . . . ." *Id.* at 9. He also alleges that one "major deficiency" at MPCC is that inmates must provide the "location of their medical records[.]" *Id.* He alleges that the medical department should "have a means of obtaining"

inmates' medical records "without making it inmates' responsibility to provide the location" of the records. *Id.*

Plaintiff informed Major Farmers that he needed access to his medical records to litigate a pending civil suit in the United States District Court, Eastern District of Louisiana. [doc. # 5, p. 10]. He claims that Farmers "informed him that only an attorney is allowed access . . . ." *Id.*

On February 16, 2022, Plaintiff gave the medical director records pertaining to his cervical and lumbar spondylosis diagnosis from December 2020. *Id.* at 11.

Plaintiff claims that during his "entire stay" at MPCC, he has been "denied legal materials, a law library, legal assistance," medical records, and the address for this Court. *Id.* He claims that he missed a deadline in his pending case in the Eastern District of Louisiana because he "was denied free postage . . . ." *Id.* He claims that Warden Stinson, Major Farmers, and the medical director would not allow him to access "medical documents" that he "could have used" to prove, in the Eastern District, his claims of deliberate indifference to his medical needs. [doc. # 21, p. 13].

Plaintiff alleges that on December 5, 2021, Lieutenant Fletcher sprayed mace at another inmate in "D Dorm[.]" [doc. # 5, p. 16]. "Plaintiff, along with the entire dorm could not breathe due to the mace, and [Plaintiff] was left in the dorm without a fan." *Id.* He alleges that there "was no threat to [Lieutenant Fletcher] or anybody at the time he sprayed the mace." [doc. # 21, p. 8].

On June 21, 2022, Plaintiff voluntarily dismissed his claims concerning "sanitation and personal hygiene," inadequate recreation, and "legal mail violations." [doc. # 21, p. 2].

Plaintiff seeks compensation, punitive damages, and an injunction to allow him to examine his medical records, pay for copies, visit a physician, and access a law library "and/or" legal assistance.  *Id.* at 4, 17-18.

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,*

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra.*  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.*  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone.  *Green v. McKaskle*, 788

F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Major Farmers and Medical Director Jane Doe**

Plaintiff raises claims of inadequate medical care against Major Famers and Medical Director Jane Doe.

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and

acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

### A. Knowledge of a Substantial Risk of Serious Harm

With respect to several of his claims of inadequate medical care, Plaintiff does not plausibly allege that Major Farmers or the medical director *knew* that he faced a substantial risk of serious harm.

Plaintiff alleges that he wrote to the medical director on an unidentified date, attempting to inform her that he "was having very painful acid reflux and that he needed to be placed back on heartburn medicine[.]"  He suffered from pain that "could have damaged his esophagus."  *Id.* He did not receive a response.  [doc. # 5, p. 5].

Plaintiff attempted to inform the medical director in writing that "sometimes his tonsils swell up and he will have green mucus come out of his eyes for hours as if he had an infection." *Id.* at 5-6.  Medical staff did not respond.  *Id.*

He wrote to the medical director on November 8, 2021, attempting to inform her that he needed "to visit neurology[,]" to "have bloodwork conducted," and to obtain "a viral load for

Hepatitis C." [doc. # 21, p. 4]. He included addresses for his medical records. *Id.* The medical director did not respond. *Id.*

On December 12, 2021, Plaintiff "submitted a MEDICAL EMERGENCY ARP[,]" in which he explained to "staff" that he "has cervical and lumbar spondylosis[,]" that arthritis is "'eating [his] spine away,'" that he had acid reflux since February 2021 but was not able to see a doctor, that his tonsils swell occasionally and cause green mucus to emit from his eyes for hours, that he needs a Hepatitis C "viral load conducted[,]" and that he had a neurology appointment for either March of April 2021, but "the appointment was not fulfilled." *Id.* at 4-5. Plaintiff claims that his emergency ARP was "not addressed by anyone at MPCC" and that a staff member returned his ARP with the notation, "Use proper form[.]" *Id.* at 5. Plaintiff alleges that the notation proves that a medical staff member "was aware of his issues." *Id.* at 14.

On December 27, 2021, Plaintiff "wrote the medical director a request[,]" stating that his pain medications were "not on the cart[,]" that his spine hurt "bad[,]" that he needed hospital care because he was in serious pain, that he had "been asking to see the doctor for months[,]" that he endured withdrawals each time his Cymbalta medication was not refilled, that he needed hot cream for arthritis pain in his spine, that acid reflux was "killing" him, and that he needed to see a physician. *Id.* at 5-6. His "request was never addressed." *Id.* at 6.

On February 6, 2022, Plaintiff sent the medical director a "medical request," asking to speak with a physician. [doc. # 5, p. 6].

As to all the requests for care above, however, Plaintiff does not plausibly allege that Farmers or the medical director knew of his serious medical needs. He states that on February 7, 2022, he informed the medical director in person that he had "been writing her since August of

2021 about all of his concerns . . . ." [doc. # 5, p. 7]. He also informed Major Farmers that the deadline for responding to his grievances passed and he had not received any responses. *Id.*

Critically, the medical director and Major Farmers responded that "they had never received any of his request forms or complaints." [doc. # 5, p. 7]. Plaintiff does not contest their responses or otherwise allege that they did in fact receive and read his requests for medical care. Rather, he alleges that he was "unable to make his medical problems known to medical staff . . . ." [doc. # 21, p. 9]. In fact, he faults the owner of Security Management, LLC, the owner of the medical provider at MPCC, and the warden for failing to ensure that Farmers and the medical director received his requests for medical care. *Id.* at 8-9, 13. The Court should therefore dismiss the claims above.[4]

### B. Plausible Claims

On February 7, 2022, Plaintiff informed the medical director in person that he had "been writing her since August of 2021 about all of his concerns . . . ." [doc. # 5, p. 7]. He also informed Major Farmers that the deadline for responding to his grievances passed and he had not received any responses. *Id.* The medical director told Plaintiff that he "would see the doctor the following week." *Id.*

---

[4] *See Ornelas v. Hamilton*, 2021 WL 4618465, at *2 (5th Cir. Oct. 6, 2021) ("[T]here was no evidence or allegation that [the defendant] was aware of facts from which he could infer that there was an excessive risk to Ornelas' safety. . . . Though Ornelas alleges that he sent letters to [the defendant], asking for help, there is no evidence or allegation that [the defendant] saw them."); *Valentine v. Collier*, 993 F.3d 270, 287 (5th Cir. 2021) ("[G]rievances alone do not suffice to show knowledge without independent verification."); *Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) ("[A] prison administrator who has received an administrative remedy request is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm."); *Beall v. Talley*, 852 F. App'x 144 (5th Cir. 2021) ("Beall fails to show that the district court erred in dismissing his claims against the third defendant for deliberate indifference to his serious medical needs based on its determination that Beall had failed to allege that the defendants were aware of his tuberculosis test results.").

On February 9, 2022, Plaintiff informed the medical director that he had pain in his "throat area[,]" swelling, and green mucus that would discharge from his eyes for hours. [doc. # 5, pp. 7-8]. He informed her that he needed medication for his acid reflux. *Id.* at 8. He also informed her that he had cervical and lumbar spondylosis, that his condition was rapidly becoming worse, that he could feel his spine deteriorating, and that he suffered serious pain. *Id.* She responded that it was his "responsibility to provide her with all the information as to the location of his medical records . . . ." *Id.* Plaintiff states that he already gave her this information. *Id.* That said, he again provided locations for his records. *Id.* at 10.

Plaintiff alleges that the "following week came and went and [he] still did not get the opportunity to visit the doctor as promised by the medical director." *Id.* at 8. Tentatively faulting the medical director and Major Farmers, he states that he "has been refused medical attention." [doc. # 21, p. 13]. He states that Farmers was aware of his medical concerns because he spoke to Farmers "directly." *Id.* The medical director ignored Plaintiff's complaints and denied him medication. *Id.* He suggests that Farmers and the medical director were aware of, yet ignored, his concerns. *Id.* at 14.

Construing these allegations liberally and in Plaintiff's favor, he plausibly claims that he informed Farmers and the medical director of his serious medical needs in person on February 7 and 9, 2022, and that they responded with deliberate indifference. The Court should retain these claims.

### C. No Deliberate Indifference

Plaintiff alleges that on February 9, 2022, the medical director informed him that he would not receive any medication for his hemorrhoids, stating, "you need to eat more cornbread, you're too young for all these health concerns." [doc. # 5, p. 7].

Plaintiff, however, does not plausibly allege that the medical director was deliberately indifferent. Rather, he quibbles with the medical director's (albeit indelicate) professional opinion that Plaintiff should alter his diet. *See Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) (opining, where a plaintiff alleged that a physician "prescribed the wrong medication for his hemorrhoids," that the plaintiff merely disagreed with treatment and did not establish deliberate indifference).

While the medical director's advice was terse, it still constituted treatment. *See Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("As a matter of law, Rostollan's instruction for Petzold to ice his ankle was medical treatment. It was medical treatment because it was medical advice that Petzold could, and did, effectuate. . . . [B]ecause medical treatment was provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied."). Plaintiff is not entitled to "the best [care] that money could buy . . . ." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Saldivar v. Davis*, 698 F. App'x 198, 199 (5th Cir. 2017).

The medical director's advice did not reach the deliberate indifference threshold. The medical director's alleged action (or inaction) does not reflect the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference." *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 346 (5th Cir. 2016) (defining deliberate indifference as "egregious intentional conduct"); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet."). The Court should dismiss this claim.

### D. Medical Director in Official Capacity

Plaintiff names the medical director as a defendant in her official and individual capacities.  [doc. # 21, p. 2].  Plaintiff does not, however, offer a short and plain statement explaining why he seeks relief from the medical director in her official capacity.  He does not allege that the medical director made any policy or implemented any custom at MPCC.  If a defendant is not a policymaker, the defendant is "not the proper defendant for an official capacity claim . . . ." *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an official capacity claim against the District Attorney's Office."); *see Friddell v. Gatewood*, 141 F.3d 1163 (5th Cir. 1998) ("The district court also properly dismissed Friddell's claims against Harris County and the Harris County defendants in their official capacity because Friddell offered no evidence as to a policy or custom on behalf of Harris County."); *Kelley v. City of Wake Vill., Texas*, 264 F. App'x 437, 442 (5th Cir. 2008) ("Because no evidence has been presented that Officer Crawford was, at any time relevant to this proceeding, a policymaker in the WVPD, we affirm the district court's dismissal of the claim against him in his official capacity.").

The Court should therefore dismiss Plaintiff's claims against the medical director in her official capacity.

### 3. Conclusory Claims

Plaintiff states that in late 2021, he "was called out to D Dorm to have blood taken (14-panel)."  [doc. # 21, p. 3].  He adds that "someone ordered this bloodwork . . . ." *Id.*  He surmises that if the medical staff at MPCC ordered it, then "obviously" the staff was aware of his serious medical concerns.  *Id.*  Plaintiff, however, does not identify a responsible defendant.

Plaintiff next alleges that "staff at several different facilities are conspiring with the

D.O.C., including MPCC."  [doc. # 21, p. 14].  Alleging that "every facility" in which he was incarcerated "displayed the exact same behavior[,]" Plaintiff suggests that "staff" at different facilities, the Louisiana Department of Public Safety and Corrections, and MPCC conspired to deny him medical treatment.  *Id.*

Plaintiff, however, does not name a defendant amenable to suit.  Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership."  LA. CIV. CODE art. 24.  MPCC and "staff" do not qualify as juridical persons.  *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991); *Henderson v. Mid States Servs., Inc*., 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . .").

If, by "staff" Plaintiff means individuals other than those he identified in his pleadings, he does not identify these persons and does not address how each person was personally involved in depriving him of a constitutional right.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 (emphasis added).  If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").  Accordingly, to the extent Plaintiff names the "staff" as unidentified persons, the Court should dismiss Plaintiff's claims against them.

Finally, Plaintiff appears to seek relief form the Louisiana Department of Public Safety and Corrections.  Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution.  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[5]  Further, "State agencies . . . are not 'persons' within the meaning of the statute." *Lumpkins v. Off. of Cmty. Dev.*, 621 F. App'x 264, 268 (5th Cir. 2015) (*quoting Will*, 491 U.S. at 71).  The Department of Public Safety and Corrections is a state agency.  Thus, it is not a "person" under Section 1983.  *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and [Department of Public Safety and Corrections] are not persons . . . .").

Accordingly, the Court should dismiss these claims.

## 4. Warden Stinson

Plaintiff alleges that on January 16, 2022, he wrote a letter to Warden Stinson about "8th Amendment medical claims in regards to all his concerns [sic][,]" "access to court[,]" and the staff's failure to respond to his request forms or grievances.  *Id.*  Plaintiff claims that the warden did not respond to his letter.  *Id.*  He wrote to the warden numerous times, but all his "requests/ARPs directed to the warden went unanswered."  *Id.* at 13.  He claims that the warden "should ensure that the grievance procedure is being conducted properly . . . ."  *Id.*

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ."  *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020)

---

[5] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  *Id.* (internal quotation marks and quoted sources omitted).

(affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claims concerning the lack of responses to his grievances and the failure to ensure that the grievance procedure operated 'properly.'

Plaintiff also alleges that "not receiving any of [his] letters or ARPs should not free [Warden Stinson] from liability for the constitutional violations that have occurred under his watch at MPCC[,]" which allegedly include violations by Major Farmers, the medical director, and Lieutenant Fletcher. [doc. # 21, p. 6].

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v.*

*Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Plaintiff does not plausibly allege that Warden Stinson affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between Stinson's conduct and any alleged constitutional violation.[6]  Instead, by naming Warden Stinson as a defendant because he is the warden and because others allegedly violated Plaintiff's rights under Stinson's "watch," Plaintiff pleads only vicarious liability.  *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Moreover, even if Plaintiff named Stinson as a defendant in Stinson's official capacity (he does not), Plaintiff does not allege that Stinson implemented an unconstitutional policy, practice, custom, or procedure.  Accordingly, the Court should dismiss the claims above against Stinson.[7]

**5. MPCC**

Plaintiff alleges that MPCC does not have "an adequate system for" ensuring that prisoners are diagnosed and treated.  [doc. # 5, p. 9].  He alleges that there are "systemic deficiencies in staffing, facilities, or procedures which" cause suffering.  *Id.*  He states that if the medical director did not receive any of his request forms or complaints for over six months, it

---

[6] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

[7] Below, the undersigned addresses Plaintiff's access-to-court claim against Stinson.

was because he was "denied copies of 'proper request forms' or 'medical requests . . . .'" *Id.*  He

"was unable to make his medical problems known to" medical staff.  *Id.*

As above, Plaintiff does not explicitly name MPCC as a defendant.  To the extent he does

seek relief from MPCC, it is not amenable to suit because it does not qualify as a juridical

person.  The Court should dismiss these claims.

## 6. Unidentified Owners of Security Management, LLC, and Medical Company

Plaintiff faults "the owner of Security Management, LLC, and/or the owner of the

medical company who provides services for inmates at MPCC" (hereafter, "the unidentified

owners") for not having "an adequate system for ensuring that prisoners are diagnosed and

treated."  [doc. # 21, p. 8].  He alleges that these defendants failed to "fix the issues."  *Id.*

### A. Individual Capacity

Plaintiff seeks relief from the unidentified owners in their individual capacities.  As

above, a supervisory official may only be liable in an individual capacity if the official

affirmatively participates in, or is causally connected to, acts that cause constitutional

deprivations.  *Mouille*, 977 F.2d at 929; *Dedrick*, 47 F.3d at 425; *Salcido*, 557 F. App'x at 292

("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must

show that they were either personally involved in the constitutional violations alleged or that

their wrongful actions were causally connected to the constitutional deprivation.").

Plaintiff does not allege that either unidentified owner affirmatively participated in, or

was in any way causally connected to, any act or omission related to his medical care.  Thus, the

Court should dismiss Plaintiff's individual capacity claims against these two defendants.

**B. Official Capacity**

Plaintiff also seeks relief from the unidentified owners in their official capacities. A supervisory official may be "held liable" if the official implements an unconstitutional policy that causes the plaintiff's injuries. *Mouille*, 977 F.2d at 929.

**i. No Pattern**

Plaintiff alleges that during his entire time at MPCC, he did not receive a meaningful response to any of his request forms or ARPs. *Id.* at 8-9. The medical director and Major Farmers informed Plaintiff that "they never received any of his request forms/grievances"; consequently, Plaintiff alleges that he was "unable to make his medical problems known . . . ." *Id.* at 9.

Plaintiff does not, however, allege that the unidentified owners implemented an explicit unconstitutional policy that deprived him of constitutionally adequate medical care. Rather, he appears to claim that the unidentified owners failed to create and implement a policy, procedure, or practice to ensure that the medical professionals or other officials with the authority to arrange care at MPCC received all requests for medical care submitted or filed by prisoners.

"Supervisory officials may be liable under § 1983 for their failure to adopt policies if that failure causally results in a constitutional injury. Liability only arises when the officials act, or fail to act, with deliberate indifference, a disregard [for] a known or obvious consequence of [their] action[s]." *Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022) (internal quotation marks and sources omitted). A plaintiff must allege that defendants "had actual or constructive notice that their failure to adopt policies would result in constitutional violations. This typically requires showing notice of [a] pattern of similar constitutional violations due to deficient policies, permitting the inference that Defendants deliberately chose policies causing violations

of constitutional rights." *Id.; see also Grant v. LeBlanc*, 2022 WL 301546, at \*5 (5th Cir. Feb. 1, 2022).

For conduct to be sufficiently widespread, it must have "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984), *on reh'g,* 739 F.2d 993 (5th Cir. 1984). The pattern requires "similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (*quoting Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (*quoting McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989)).

Here, Plaintiff does not allege a pattern of similar constitutional violations. He only alleges that medical professionals or officials did not receive *his* requests for care. *See Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (finding no custom where "the complaint's only specific facts appear in the section laying out the events that gave rise to this action."); *Brown v. Tarrant Cnty., Texas*, 985 F.3d 489, 498 (5th Cir. 2021) ("Brown identified only one instance of the county's confining a committee without treatment—his own—but [i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability.") *Clyce v. Hunt Cty., Tex.*, 515 F. App'x 319, 325 (5th Cir. 2013) (county did not have a policy or custom of delaying medical care, where the plaintiffs offered evidence relating only to the detainee); *Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 256 (5th Cir. 2014) ("That [two prisoners] received [medical

care] either too early or too late may indicate, as the district court suggested, a failure in judgment by the prison officials. These two isolated failures in judgment cannot, however, establish a custom or policy of denying medical care to inmates.").[8]

Plaintiff also alleges that the owners did not implement "an adequate system for ensuring that prisoners are diagnosed and treated." [doc. # 21, p. 8]. However, this allegation is conclusory and does not reveal a pattern. *See Lempar v. Livingston*, 834 F. App'x 966, 968 (5th Cir. 2021) ("To the extent that Lempar contends that 'systemic failures' in the prison system should be attributable to the former director of the Texas Department of Criminal Justice, he . . . has not identified an unconstitutional policy giving rise to a constitutional injury.").

**ii. No Moving Force**

Suggesting that there is an explicit policy, Plaintiff alleges that one "major deficiency" at MPCC is that inmates must provide the "location of their medical records[.]" [doc. # 21, pp. 8, 9]. He alleges that the medical department should "have a means of obtaining" inmates' medical records "without making it the inmates' responsibility to provide the location" of the records. *Id.* at 9.

Private prison management companies may not be held vicariously liable for the civil rights violations of their employees or agents. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). They can be found liable only if they cause the constitutional violation at issue, for example, by establishing an unconstitutional policy or custom. *See City of Canton v.*

---

[8] *See also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009) (twenty-seven complaints of excessive force against city police officers over a four-year period did not suggest a pattern so common and well-settled as to constitute a custom that fairly represented an official policy); *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) ("'I was treated unprofessionally' plus 'eighty-two generic complaints' does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.").

*Harris*, 489 U.S. 378, 385 (1989).  To recover, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

To demonstrate that the policy was the "moving force" behind a constitutional violation, a plaintiff must "demonstrate a direct causal link between the [] action and the deprivation of federal rights."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "[T]he connection must be more than a mere 'but for' coupling between cause and effect." *Valle v. City of Houston*, 613 F.3d 536, 546 (5th Cir. 2010) (*quoting Thompson v. Connick,* 578 F.3d 293, 300 (5th Cir. 2009)).

Here, Plaintiff does not plausibly allege that the alleged policy was the moving force of any constitutional violation.  He does not allege that the medical director or any other medical professional denied him care *because* inmates were required to provide the location of their medical records.  In fact, Plaintiff states that he furnished the location of his medical records, yet he still did not receive care.  [doc. #s 5, pp. 8, 10-11; 21, pp. 4, 6, 9].

### C. Standing

Plaintiff claims that the unidentified owners failed to "ensure that all inmates receive the same fair medical treatment[.]"  [doc. # 21, pp. 13-14].  He alleges that because the unidentified owners are "more 'cost conscious, rather than care conscious,'" inmates have suffered extreme pain and injuries.  *Id.* at 14.  Defendants allegedly delayed treatment for inmates and refused them hospital and specialist care.  *Id.* at 10.  Defendants allegedly failed to treat inmates' "serious psychiatric disorders . . . ."  *Id.*

Plaintiff, however, lacks standing to pursue relief on behalf of other inmates. Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that, "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims." *See Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[9]

In addition, Plaintiff may not act as counsel for other prisoners. *See, e.g.*, *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis."). Parties can represent themselves or they can be represented by an attorney; they cannot be represented by a non-lawyer. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (*citing Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

Accordingly, the Court should dismiss Plaintiff's claims against the two unidentified owners.

---

[9] *See also Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

**7. Access to Court**

Plaintiff claims that during his "entire stay" at MPCC, he has been "denied legal materials, a law library, legal assistance," medical records, and the address for this Court.  [doc. # 5, p. 11].

To succeed on claim that a defendant violated a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial.  *Lewis v. Casey*, 518 U.S. 343, 356 (1996).  The "injury requirement is not satisfied by just any type of frustrated legal claim."  *Id.* at 353.  Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983.  *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

"Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.'"  *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (*quoting Christopher*, 536 U.S. at 413-14).

 "To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought."  *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012); *see Christopher*, 536 U.S. at 413-14 (("These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended

poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.").

Here, Plaintiff first alleges that he was denied this Court's address, suggesting that he was impeded from litigating the claims in the instant proceeding. However, he does not allege that he was unable to file the instant claims because he lacked this Court's address. He did file his claims, and they are pending. Because they are pending, he has not yet lost; thus, the lack of this Court's address did not cause him to lose this case. *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) ("[T]o make out a claim that his constitutional right of access to the courts has been violated, [a plaintiff] must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts."). Plaintiff has not identified "a remedy that is not otherwise available in another suit . . . ." *See Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019) (finding that the plaintiffs did not identify a remedy that is not otherwise available in another suit that may yet be brought because the plaintiffs were actively litigating their underlying claim, because it was "too early to say" that the plaintiffs' underlying claim was compromised, and because the plaintiffs had yet to suffer a "concrete setback traceable to the defendants'" actions).[10]

Next, Plaintiff claims that he was denied free postage and that consequently, he "missed a January 27, 2022 deadline for his civil case in the Eastern District[,]" *Matthew Caleb Sawyer v. Kecia Charles, et al.*, 2:21-cv-0482 (E.D. La. 2021). [doc. # 5, pp. 11-12]. He writes: "The deadline was not met, therefore the plaintiff's case could not be presided over by a full-time

---

[10] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

magistrate judge and was sent back in front of a busy District Judge (Jay C. Zainey)." *Id.* Plaintiff, however, does not identify a responsible defendant. The Court should dismiss this claim.

Plaintiff next claims that he was denied access to his medical records, which allegedly impacted claims he presented in *Sawyer*, 2:21-cv-0482. He maintains that he could have proved his deliberate indifference claims if he had access to his medical records. [doc. # 21, p. 13]. He needed "medical documents" to "convince the District Judge that medical staff at Nelson Coleman [Correctional Center] was deliberately indifferent to his serious health issues." *Id.* He faults the medical director, Major Famers, the unidentified owners, and Warden Stinson. [doc. #s 5, pp. 10-11; 21, pp. 9, 13].

In *Sawyer*, 2:21-cv-0482, Plaintiff raised several claims of deliberate indifference against four medical professionals. On March 29, 2022, the Eastern District court dismissed the deliberate indifference claims. *Id.* at Doc. 54. Here, Plaintiff does not state a plausible access-to-court claim because he does not identify which, of the numerous deliberate indifference claims he raised in the Eastern District, he lost because he lacked access to his medical records. Otherwise stated, he does not identify a non-frivolous, arguable claim that he could not raise, that he raised and lost, or for which he could not obtain a remedy. *See Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) ("His assertions that he has been hindered in presenting claims challenging his criminal conviction and prison disciplinary cases are conclusory. He fails to describe the claims with the particularity needed to evaluate whether they were nonfrivolous and does not explain with specificity how the absence of legal materials and assistance in Spanish actually hindered those claims.").

In addition, before the Eastern District court dismissed his claims, Plaintiff possessed some medical records, and he presented the records in an opposition to the defendants' motion to dismiss. *Sawyer*, 2:21-cv-0482, Doc. 47-2. To the extent Plaintiff lacked access to other medical records that he did not possess and was unable to present to the Eastern District, he does not identify those records or explain how he would have used those records to thwart dismissal. Rather, he merely speculates without explanation that he would have been able to prove deliberate indifference if he had access to unidentified records.

Plaintiff next claims that because he lacked legal assistance, access to a law library, and access to legal materials, he was "unable to adequately prepare for motions and has had motions denied that could have been granted otherwise." [doc. # 5, p. 12]. He tentatively faults Warden Stinson and Major Farmers. *Id.* at 18.

Plaintiff fails to state a plausible claim for several reasons. Foremost, he does not identify the motions that he lost because of defendants' actions. In *Sawyer*, 2:21-cv-0482, Doc. 47-2, Plaintiff filed and lost (or lost in part) approximately nine motions. In addition, he only alleges that he lost motions; he does no allege that he lost a *claim* or was unable to obtain final relief because of any defendant's action or omission.

In addition, with respect to the inability to access a library or a claim that a library was deficient, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even

to file a complaint." *Id.* "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The "inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim." *Sanchez*, 689 F. App'x at 799.

Here, Plaintiff does not plausibly allege that he lost *because* of his inability to access a law library or legal materials. He does not explain, for instance, how access to the law library or legal materials would have aided him, "how he would have proceeded with access to a law library," what specific cases or law he would have cited if he had access to the law library, "or how [his] claims would have been meritorious." *See Hopkins v. Ogg*, 2019 WL 3761360, at *3 (5th Cir. Aug. 8, 2019).

If Plaintiff claims that his lack of access to the library or legal materials affected his ability to conduct research, "there is no constitutional right to 'be able to conduct generalized research.'" *See Douthit v. Dean*, 568 F. App'x 336, 337 (5th Cir. 2014) (*quoting Lewis,* 518 U.S. at 351) (reasoning that the plaintiff's "motion alleged that the library's deficiencies would cause immediate harm to his case, [but] he did not specify how the case would be harmed. For example, he did not allege that he was unable to draft an adequate complaint or other pleading without the missing volumes."). There is no "abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351.

Last, Plaintiff does not explain how the lack of legal assistance or counsel caused him to lose his claims. In fact, the court in the Eastern District explained that Plaintiff's "lack of an attorney [] in no way contributed to Defendants'" successful motion to dismiss Plaintiff's

deliberate indifference claims.  *Sawyer*, 2:21-cv-0482, Doc. 54, n.3.  The district judge

explained:

> Sawyer filed three motions during the course of this case to have an attorney
> appointed to represent him. The magistrate judge denied those motions (once
> without prejudice while the case was stayed) and this Court denied Sawyer's
> objection when he sought review. (Rec. Doc. 48, Order). The Court observes
> that Sawyer's pleadings are well organized, well-written, and well-researched.
> Moreover, Sawyer's opposition memorandum, for which Sawyer prepared a
> Table of Contents, evinces an impressive understanding of the confines of the
> Court's inquiry in conjunction with a Rule 12(b)(6) motion to dismiss. Thus,
> notwithstanding the outcome of this ruling, the Court is persuaded that in light
> of Sawyer's excellent ability to express himself in writing coupled with the
> mandatory liberal construction given his pro se pleadings by the Court, his lack
> of an attorney has in no way contributed to Defendants' success on this motion.

*Id.*

The Court should dismiss Plaintiff's access-to-court claims.

## 8. Excessive Force

Plaintiff alleges that on December 5, 2021, Lieutenant Fletcher sprayed mace at another

inmate in "D Dorm[.]"  [doc. # 5, p. 16].  "Plaintiff, along with the entire dorm could not breathe

due to the mace, and [Plaintiff] was left in the dorm without a fan."  *Id.*  He alleges that there

"was no threat to [Lieutenant Fletcher] or anybody at the time he sprayed the mace."  [doc. # 21,

p. 8].

When a prison official is accused of using excessive physical force in contravention of

the Eighth Amendment's Cruel and Unusual Punishments Clause, the core inquiry is "whether

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (*citing Whitley v. Albers*,

475 U.S. 312, 320-21 (1986)).  "This standard looks to an official's subjective intent to punish."

*Perez v. Collier*, No. 20-20036, 2021 WL 4095263, at *2 (5th Cir. Sept. 8, 2021).

However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 6 (citation omitted). The Eighth Amendment does not protect against "*de minimis*" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind." *Id*. (citation and internal quotation marks omitted). Courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

Here, Plaintiff does not allege that Lieutenant Fletcher acted with the requisite *mens rea*. Plaintiff does not allege that Fletcher sprayed *him* with mace; rather, Fletcher sprayed another inmate, and Plaintiff was only indirectly exposed as a bystander because he was in the vicinity of the effects of the spray. Plaintiff in other words alleges only that he received unintentional, indirect, or residual effects of the spray. He does not plausibly allege that Fletcher acted maliciously and sadistically to cause *him* harm. *See Winfrey v. Vannoy*, 2019 WL 3308427, at *2 (M.D. La. June 6, 2019), *report and recommendation adopted,* 2019 WL 3307835 (M.D. La. July 23, 2019) ("Plaintiff's claim of second-hand exposure to a chemical agent due to the security personnel's use of that chemical agent to gain compliance of Plaintiff's cellmate does not rise to the level of a constitutional violation.").[11]

---

[11] *See also Tyson v. LeBlanc*, 2010 WL 5375955, at *19 (E.D. La. Nov. 19, 2010), report and recommendation adopted, 2010 WL 5376330 (E.D. La. Dec. 15, 2010), aff'd, 431 F. App'x 371 (5th Cir. 2011); *Moore-Bey v. Cartrette*, 2015 WL 5608194, at *3 (W.D. La. July 16, 2015), *report and recommendation adopted,* 2015 WL 5611141 (W.D. La. Sept. 23, 2015); *Ross v. Dickerson*, 2015 WL 5675555, at *3 (E.D. Tex. Aug. 26, 2015), *report and recommendation adopted,* 2015 WL 5692387 (E.D. Tex. Sept. 21, 2015); *Tillman v. Bradford*, 2015 WL 6132128, at *6 (W.D. La. Sept. 17, 2015), *report and recommendation adopted,* 2015 WL 6133041 (W.D. La. Oct. 16, 2015); *Rivers v. Carvajal*, 2020 WL 8092381, at *2 (W.D. La. Dec. 3, 2020), *report and recommendation adopted,* 2021 WL 54149 (W.D. La. Jan. 6, 2021); *David*

To the extent Plaintiff claims that the mace created unconstitutional conditions of confinement, he likewise fails to state a plausible claim.

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[12] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

Here, Plaintiff does not plausibly plead (1) an extreme deprivation of health or safety or (2) a substantial risk of serious harm. He does not explain, for example, how close he was to the spray or its effects, how long the effects endured, or how much mace Fletcher sprayed. *Compare Gillette v. CoreCivic*, 2018 WL 5723946, at *2 (N.D. Miss. Nov. 1, 2018) ("The single use of pepper spray against another inmate, which caused Mr. Gillette difficulty breathing for a short time, does not constitute denial of a basic human need for an unreasonable amount of time."); *with Cardona v. Taylor*, 828 F. App'x 198, 202 (5th Cir. 2020) (officers ordered the plaintiff

---

*v. Johnson*, 2006 WL 2795820, at *6 (E.D. Tex. Sept. 25, 2006); *Evans v. Rheams*, 2020 WL 3163667, at *4 (M.D. La. May 28, 2020), *report and recommendation adopted,* 2020 WL 3130299 (M.D. La. June 12, 2020).

[12] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

back into his cell which was still filled with tear gas, refused to provide supplies for decontamination, denied him opportunity to go to medical department for treatment of injuries and exposure to tear gas, and declined to house him in cell free of tear gas); *and Hope v. Harris*, 861 F. App'x 571, 584 (5th Cir. 2021)  (prisoner was exposed to pepper spray and tear gas in his cell "at least ten times through no fault of his own," his cell was not decontaminated, and on one occasion he was "left nude in a cell with the pepper spray still on his body [without anything] to clean it off with for eight days.").

Moreover, Plaintiff does not allege that Fletcher knew Plaintiff was exposed to any harm at all following the spraying.  In this respect, Plaintiff does not plausibly allege that Fletcher *knew of* a substantial risk of serious harm.

Finally, Plaintiff claims that he and other inmates "were left" in the dormitory without a fan.  [doc. # 21, p. 8].  Plaintiff, however, does not identify a responsible defendant or otherwise allege that Fletcher failed to either remove him from the dormitory or introduce a fan.  If he does fault Fletcher, he does not, to reiterate, allege that Fletcher knew he was exposed to the effects of the mace, how long he suffered from the effects, or that Plaintiff required a fan.  In this respect, Plaintiff does not plausibly allege that Fletcher was deliberately indifferent.

The Court should dismiss these claims.

### <u>Recommendation</u>

For the reasons above, **IT IS RECOMMENDED** that—with the exception of Plaintiff Matthew Caleb Sawyer's claims of lack of medical care against Major Tommy Famers and Medical Director Jane Doe in their individual capacities arising out of his requests for medical care on February 7 and 9, 2022—Plaintiff's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 19th day of July, 2022.


_____
Kayla Dye McClusky
United States Magistrate Judge