UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| MATTHEW CALEB SAWYER | CIV. ACTION NO. 3:22-00602 SEC. P |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CHRIS STINSON, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 78] filed by Defendant, Deborah Ash (sued as, Debbie Ash). The motion is opposed. For reasons detailed below, it is recommended that the motion be GRANTED.

### Background

On March 2, 2022, Plaintiff pro se Matthew Caleb Sawyer ("Sawyer"), who is proceeding in forma pauperis in this matter, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 against several defendants. (Compl.). Following Sawyer's filing of one or more amended complaints, *see* doc. #s 5 & 21, the undersigned reviewed the pleadings and, on July 20, 2022, recommended dismissal of Sawyer's claims "--with the exception of . . . [his] claims of lack of medical care against Major Tommy Farmer [incorrectly sued as "Tommy Farmers"] (hereinafter, "Farmer") and Medical Director Jane Doe in their individual capacities arising out of his requests for medical care on February 7 and 9, 2022 . . ." (July 20, 2022 Report & Recommendation ("R&R") [doc. # 22]).[1]

In the R&R, the undersigned documented the factual basis for Sawyer's surviving claims, as follows,

---

[1] The District Court adopted the R&R. (Aug. 2, 2022 Judgment [doc. # 25]).

> On February 6, 2022, Sawyer sent the medical director a "medical request," seeking an audience with a physician. [doc. # 5, p. 6]. On February 7, 2022, Sawyer informed the medical director in person that he had "been writing her since August of 2021 about all of his concerns . . ." [doc. # 5, p. 7]. He also informed Major Farmer that the deadline for responding to his grievances passed and he had not received any responses. *Id*. The medical director and Major Farmer responded that "they had never received any of his request forms or complaints." *Id*. The medical director told Sawyer that he "would see the doctor the following week." *Id*.
>
> On February 9, 2022, Sawyer informed the medical director that he had pain in his "throat area[,]" swelling, and green mucus that would discharge from his eyes for hours. [doc. # 5, pp. 7-8]. He informed her that he needed medication for his acid reflux. *Id*. at 8. He also informed her that he had cervical and lumbar spondylosis, that his condition was rapidly becoming worse, that he could feel his spine deteriorating, and that he suffered serious pain. *Id*. She responded that it was his "responsibility to provide her with all the information as to the location of his medical records . . . ." *Id*. Plaintiff states that he already gave her this information. *Id*. That said, he again provided locations for his records. *Id*. at 10.
>
> Plaintiff alleges that the "following week came and went and [he] still did not get the opportunity to visit the doctor as promised by the medical director." *Id*. at 8. Tentatively faulting the medical director and Major Farmer, he states that he "has been refused medical attention." [doc. # 21, p. 13]. He states that Farmer was aware of his medical concerns because he spoke to Farmer "directly." *Id*. The medical director ignored Sawyer's complaints and denied him medication. *Id*. He suggests that Farmers and the medical director were aware of, yet ignored, his concerns. *Id*. at 14.

*See* R&R, pgs. 12-13.

On July 20, 2022, the court issued a service order for Defendant, Farmer. (July 20, 2022 Mem. Order [doc. # 23]). Farmer filed his answer to Sawyer's complaint, as amended, on October 12, 2022. (Answer [doc. # 32]).

On January 20, 2023, following discovery, Sawyer filed a motion for leave of court to file an amended complaint, wherein he proposed to join Debbie Ash (Director of Nurses) as a Defendant, in her individual and official capacities, and to substitute "B. Salis" for the fictitiously named "Jane Doe Medical Director." *See* doc. #s 47 & 54.

On April 14, 2023, the court granted in part Sawyer's motion, and permitted him to file an amended complaint to substitute "B. Salis" for the "Jane Doe" Defendant and to join Debbie Ash as an additional Defendant, in her individual capacity only. [doc. # 60]. In so doing, the undersigned stated,

> [w]ith the exception of Sawyer's proposed claim against Debbie Ash, in her official capacity, the court will not otherwise parse through Sawyer's Third Amended Complaint. It appears to the court that "B. Salis" is the "Jane Doe Medical Director" referenced in the prior iterations of Sawyer's complaint. Moreover, although it now appears that Debbie Ash was/is the actual medical director, she was not directly involved in the events of February 7 and 9, 2022. Accordingly, what Ash knew and when she knew it was not addressed in the R&R.

*Id*.

Sawyer duly filed his Third Amended Complaint ("TAC") on May 10, 2023, wherein he joined Beverly Solis and Debbie Ash (a/k/a "Deborah" Ash) (hereinafter, "Ash") as additional Defendants in their individual capacities only. (TAC [doc. # 68]). He further clarified that he was not pursuing state law claims. *Id*.[2]

On September 6, 2023, Ash filed the instant motion to dismiss Sawyer's claims against her for failure to state a claim upon which relief can be granted.

Sawyer filed his response to the motion on September 25, 2023. (Pl. Response [doc. # 86]). Ash did not file a reply and the time to do so has passed. *See* Notice of Motion Setting. [doc. # 79]. Accordingly, the matter is ripe.

### **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim

---

[2] On June 15, 2023, Sawyer voluntarily dismissed Defendant, Tommy Farmer. [doc. #s 73-74].

3

for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised

upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*.

## Analysis

### I. Law

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id*. "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id*. (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted).

In his TAC, Sawyer alleges that Ash was deliberately indifferent to his serious medical needs from August 31, 2021 until he started receiving medication for his spinal issue in June 2022. (TAC, pg. 4). He contends that this delay in medical treatment amounts to a violation of

his rights under the Eighth and Fourteenth Amendments.[3]

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (citations omitted). Thus, to establish liability for inadequate medical care under the Eighth Amendment, an inmate must adduce facts which "clearly evince" a serious medical need and the prison official's deliberate indifference to it. *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Furthermore, "[t]o succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation marks omitted); *see also Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an

---

[3] If Sawyer is a convicted prisoner, then his rights derive from the Eighth Amendment. *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) ("The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees") (citation omitted). However, the Eighth Amendment is made applicable to the States through the Fourteenth Amendment. *Kennedy v. Louisiana*, 554 U.S. 407, 419; 128 S.Ct. 2641, 2649 (2008), *as modified* (Oct. 1, 2008), *opinion modified on denial of reh'g,* 554 U.S. 945; 129 S.Ct. 1 (2008). Furthermore, the Fifth Circuit's Fourteenth Amendment case law concerning pretrial detainees is based on the same Supreme Court's Eighth Amendment precedent pertaining to prisoners. *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). Ultimately, then, "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

inmate's health "only if [s]he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (applying *Farmer* to a denial of medical care claim). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). "[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Thus, mere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice." *Delaughter v. Woodall*, 909 F.3d at 136 (citations omitted). Moreover, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Continuous medical care ordinarily precludes a finding of deliberate indifference on the part of prison officials. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992).

In short, "[d]eliberate indifference is an extremely high standard to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see Alton v. Tex. A & M*

7

*Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Domino, supra* (quoting *Farmer, supra*) ("[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'").

**II. Discussion**

In her motion, Ash observes that Sawyer's allegations against her center upon her August 31, 2022 response to a grievance(s) that he had submitted. *See* MCC CF3 [doc. # 35, pg. 3].[4] Ash contends that her response to the grievance demonstrates a clear effort to address Sawyer's concerns, as raised in the grievance(s). She emphasizes that Sawyer did not provide any specific information about how she was involved personally in his delayed medical care, that she possessed any direct personal knowledge upon which she failed to act, or how she otherwise failed to provide appropriate care in the correctional environment.

As anticipated by Ash, Sawyer principally relies upon her statements from August 31, 2022, in his response to her motion. Before addressing Ash's response, however, it is important to consider Sawyer's grievance or "ARP," that prompted her response.[5] In his ARP, Sawyer complained that the facility's administrative remedy procedure was not in compliance with the law. [doc. # 37-2, Exh. 5]. He also complained that on December 20, 2021, he submitted a medical emergency ARP requesting to see a doctor for his cervical and lumbar spondylosis. *Id*. He explained that his condition had spread and that his arthritis swelled up and was painful if he

---

[4] The court may consider the document for purposes of this motion because Sawyer discussed it in his TAC and listed it as an exhibit thereto. *See* doc. # 68-1.

[5] Sawyer incorporated the August 16, 2022 ARP into his TAC by including it on an attached exhibit list. *See* doc. # 68-1.

barely touched his spine. *Id*. He stated that he had complained about not receiving his proper medication prescribed by neurology, that his tonsils swelled up, that he had green mucus coming out of his eyes, and that he needed follow-up testing for hepatitis. *Id*. He represented that the ARP had been returned to him with the instructions to "use proper form." *Id*. Sawyer emphasized that, under applicable regulations, an ARP cannot be rejected simply because it was not submitted on a proper form. *Id*. He added that he was not placed back on his Flexeril medication until July 2022, which meant that his cervical and lumbar spondylosis conditions were left untreated during this period. *Id*. He surmised that the lack of treatment may have had a deleterious effect on his health. *Id*.

On August 31, 2022, Ash, who identified herself as the "Interim DON," submitted a response to Sawyer's August 16, 2022 ARP, wherein she stated that, because of Sawyer's actions, it was possible that an ARP had been mistaken for a sick call request. (MCC CF2 [doc. # 35, pg. 2]). She explained that if Sawyer were to complete a sick call, then he would be placed on the list for the nurse practitioner. *Id*. She also attached the following narrative to her response:

> Mr. Sawyer,
>
> In regards to your complaint that a an [sic] Administrative Remedy Procedure was not responded to timely - It is possible that is true. I apologize if I did miss it but there is something you can help me with so that does not happen again.
>
> When you submit paperwork to medical, you consistently do not fill out the appropriate form. I understand that DOC told you an ARP can be on anything but by not filling out the appropriate form for other things, it is very difficult to figure out what you are needing.
>
> You stated that you asked for sick call forms multiple times over a period of days and could not get one. During that same period of time, other people from your same dorm were able to submit a sick call[ ]on the proper form.

9

> Not only were you writing requests on plain notebook paper for yourself, you were also writing them for your peers on notebook paper. Just trying to figure out who was submitting the sick call became a challenge.
>
> Some of the peers you wrote sick calls for had either already written their own request or submitted one later - on the correct form. One person that you wrote a sick call for said he had no idea why one was submitted for him, he didn't need one.
>
> Not only has that created an issue, every document you wrote has legal jargon, quoted regulations, section and citation headings, numbers, medical information, and statements about medical reports that are inconsistent with what we read in the report. I truly do not need any of that information. All I need is a description of what is ailing you and the associated symptoms.
>
> At one time, we received so many documents in medical in your hand writing [sic] and excess information, it was difficult to figure out who was asking for something, and what that something was. That is when I sent them back and asking [sic] they be put on the proper form. It is also probably when I missed that one was an ARP. We are really busy in medical, the time it takes to decipher all of your writings to figure out what you need, are minutes we could have spent rendering care.
>
> I have been to the control room several times and observed you walking, sitting, standing, and climbing with no visible impairment. The Provider saw you in February 2022. After reviewing your records, and assessing you, she determined there was no need for a change in treatment. When she informed you of that, you became argumentative with her,
>
> As she reinforced on that day, our duty is to provide necessary [sic] to you. It is not to help your position in court. In all the words you have on a [sic] paper, I find things you believe we did not do or did incorrectly in the past but it does not report what your current issue is or what is consistent [sic] with what I see.
> Please-you are making this far too complicated. if you are experiencing an ailment, please get a sick call slip, write what the ailment is and what your symptoms are. All the other stuff is unnecessary.
>
> Your request for remedy was 2-fold
> 1) to adhere to LA state code that outlines the rules to be followed in regards to the ARP.
> 2) to acknowledge that we have not the [sic] followed the ARP process
> What I will say is that had I known your request was an ARP, I would have followed it and I will going forward and you have my sincere apology.

(MCC CF3).

10

Sawyer focuses on various portions of Ash's response to support his claim against her. First, he contends that her response confirms that she was aware of his grievance(s) from 2021, but ignored it. However, Sawyer's treatment records confirm that, upon his arrival at the facility in August 2021, the nurse practitioner documented his prescriptions for Meloxicam, an NSAID,[6] and Duloxetine, which contains Cymbalta. (MCC MF17 [doc. # 35-1, pg. 17]).

Furthermore, on December 2, 2021, the nurse practitioner again prescribed Meloxicam and Duloxetine for Sawyer. (MCC MF16 [doc. # 35-1, pg. 16]). While Sawyer apparently complained later in December that he was not receiving his medication, his treatment record includes a signature by the nurse practitioner that was dated January 11, 2022, and which suggests, at minimum, that she had reviewed his medical record. (MCC MF17). Then, on January 26, 2022, Sawyer submitted a request for his medications to be refilled. (MCC MF12 [doc. # 34-1, pg. 12]). On February 5, 2022, the nurse practitioner replied that the medications were now on the cart. *Id*.

The court appreciates that Sawyer remains displeased with Beverly Solis's February 9, 2022 disposition of his requests for copies of his medical records, hot cream and medication for his soreness and swelling, plus a corticosteroid, all of which were set forth on a medical request form dated February 7, 2022. *See* MCC MF11 [doc. # 35-1, pg. 11]. However, Solis did provide Sawyer with some instructions and counseling, while noting that he was "very difficult during [the] encounter." *Id*. Subsequently, on April 26, 2022, the nurse practitioner prescribed Flexeril to Sawyer and increased his Meloxicam prescription. (MCC MF16). The nurse practitioner also

---

[6] NSAID stand for nonsteroidal **anti-inflammatory** drug.

reviewed his previous records. *Id*.

Sawyer, however, maintains that he did not receive his medication until June. He also takes issue with Ash's characterization of his February encounter with Solis. Moreover, he complains that Ash's observations of him from the control room did not constitute a proper examination.

Upon consideration, the court finds that Ash's August 31, 2022 response to Sawyer's August 16, 2022 ARP shows that, at best, she might have seen his December 20, 2021 emergency medical request. However, Sawyer's treatment records show that he had been seen by the nurse practitioner on December 2, 2021, and that the nurse practitioner again reviewed his records on January 11, 2022. Furthermore, when he requested a medication refill on January 26, 2022, the nurse practitioner placed the medication on his cart. Importantly, Ash's response does not show that she knew or should have known of ongoing issues concerning Sawyer's failure to receive his medication or his inability to see a "doctor."

While Sawyer criticizes Ash for discounting the severity of his complaints by virtue of viewing him from the control room, Ash never suggested that her informal observations constituted a substitute for a physical examination. If Sawyer had been in significant back pain, it stands to reason that his cervical and lumbar impairments would have included physical manifestations that were apparent in Sawyer's activities of daily living. However, none were apparent to Ash.

Understandably, Sawyer faults Ash for overlooking his prior complaints. However, her response to his ARP does not show that she was aware of any open-ended, unaddressed healthcare issue involving Sawyer that she intentionally ignored. To the contrary, when she

observed him, she did not see someone who appeared to be suffering from a significant back impairment. Furthermore, she expressed contrition in her response and resolved to do better --- with Sawyer's assistance. In other words, Ash's response denotes the antithesis of deliberate indifference.

Ultimately, Ash's alleged action (or inaction) does not reflect the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference." *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 346 (5th Cir. 2016) (defining deliberate indifference as "egregious intentional conduct"); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet.").[7] Accordingly, the undersigned finds that Sawyer fails to state a claim for denial of medical care against Ash under § 1983.

## Conclusion

For the above assigned reasons,

---

[7] *See Ornelas v. Hamilton*, 2021 WL 4618465, at *2 (5th Cir. Oct. 6, 2021) ("[T]here was no evidence or allegation that [the defendant] was aware of facts from which he could infer that there was an excessive risk to Ornelas' safety. . . . Though Ornelas alleges that he sent letters to [the defendant], asking for help, there is no evidence or allegation that [the defendant] saw them."); *Valentine v. Collier*, 993 F.3d 270, 287 (5th Cir. 2021) ("[G]rievances alone do not suffice to show knowledge without independent verification."); *Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015) ("[A] prison administrator who has received an administrative remedy request is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm."); *Beall v. Talley*, 852 F. App'x 144 (5th Cir. 2021) ("Beall fails to show that the district court erred in dismissing his claims against the third defendant for deliberate indifference to his serious medical needs based on its determination that Beall had failed to allege that the defendants were aware of his tuberculosis test results.").

13

IT IS RECOMMENDED that the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 78] filed by Defendant, Debbie (a/k/a Deborah) Ash, be GRANTED, and that Plaintiff's claims against said Defendant only be DISMISSED, with prejudice. FED. R. CIV. P. 12(b)(6).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 31st day of October, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE